### P. T. Norwood v. W. K. Snell et al.

No. 1114. Decided June 9, 1902.

Order of Sale—Probate Records—Signing Minutes.

It was not essential to the validity of orders of sale of land in administration, appearing in the minutes of the county court in 1868, that the presiding judge should have approved and signed the minutes of the term at which they were rendered; the statute requiring such signature is directory merely. 1 Pasch. Dig. Laws, arts. 1236, 1383. (Pp. 583-585.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Red River County.

*W. T. Armistead, Dan T. Leary,* and *Geo. T. Vaughan,* for appellant. The failure of the county judge who presided over the County Court of Red River County sitting as a probate court to sign the probate minutes of said court at its February term, 1868, is merely an irregularity and a neglect of duty on the part of said judge, which does not make void the judgments and orders which appear of record on the minutes of said term of said court. The record imports verity and can not be attacked in this collateral proceeding. Cannon v. Hemphill, 7 Texas, 184; Wright v. State, 37 Texas Crim. Rep., 3; Freem. on Judg., sec. 50e; Crim v. Kessing, 89 Cal., 478; Baker v. Baker, 51 Wis., 538; Traer v. Whitman, 56 Iowa, 443; Clapp v. Hawley, 69 N. Y., 625; Keener v. Goodson, 89 N. C., 273; Gun. v. Tackett, 67 Ga., 725; French v. Pease, 10 Kan., 51; Fontaine v. Hudson, 93 Mo., 62; Rollins v. Henry, 78 N. C., 342; Cathcart v. Peck, 11 Minn., 45; Childs v. McChesney, 20 Iowa, 431; Ex parte Slocomb, 9 Ark., 375; Van Fleet's Col. Att., sec. 690; Newman's Estate, 7 Am. St. Rep., 146; Estate of Cook, 11 Am. St. Rep.,

267; Ritchie v. Carpenter, 26 Am. St. Rep., 877; Scott v. Bohman, 47 Am. St. Rep., 767.

*Chalmers, Doak & Kennedy,* for appellees.—The minutes of the court should be signed by the judge. A minute not so signed nor in any way established can import no verity and does not show that it has ever received judicial sanction, and the entry does not indicate what land was to be sold. All this must appear in the record for the purpose of giving the judgment a specific operation and effect. Hart. Dig., art. 316.

If the signature of the judge to the minutes can be dispensed with, if the mere writing in a book for which no one appears to be responsible can take the place of a record, duly signed and approved, and become of equal force, then why did the Legislature say they should be approved and signed by the judge? If it be a mere irregularity and imports verity, then why is the language used that they shall be signed by the judge? Not only is the approval and the signature of the judge wanting, but the petition and the purported order taken together describe nothing and leave it to conjecture as to what in fact was done or what was intended to be done, if anything. Who vouches for the judge? Where is the attestation of the clerk who wrote the pretended order? Where is the evidence that the book offered in evidence was ever a probate record of Red River County? Without some of these earmarks of identification, how could the trial court know that the book was a probate minute book, that the orders were made and the land was the land described in plaintiff's second amended petition? And how can this court know these things?

BROWN, Associate Justice.—The Court of Civil Appeals of the Third Supreme Judicial District has certified to this court the following statement and question:

"There is now pending in this court cause No. 2792, styled P. T. Norwood v. W. K. Snell et al., an action of trespass to try title by the appellant against the appellees. Judgment of the trial court was in favor of the appellees, defendants below. Appellant deraigned title through the administration of the estate of one R. C. Hemmingway, whereof John H. Caudle was administrator, formerly pending in the District Court of Red River County.

"Plaintiff offered in evidence so much of the probate records of the February term, 1868, of the County Court of Red River County as tended to show an order of the court to sell the land in controversy. Preceding this order was an application and petition for the sale of the land in controversy. The order offered in evidence is as follows:

" 'February Term, 1868, W. M. Harrison v. The Estate of R. C. Hemmingway, deceased. Petition to compel administrator to sell lands for cash:

" 'This cause coming on to be heard on application of plaintiff, and it appearing to the satisfaction of the court that it would be to the inter-

'est of the estate to sell said land on a credit of twelve months, it is there-
fore ordered by the court that the administrator proceed to sell said land
on a credit of twelve months, bond with approved security retaining a lien
on land for payment of purchase money, after giving legal notice, to
satisfy plaintiff's demand, on the first Tuesday in April.'

"To the introduction of which the defendant objected on the ground
that the county judge presiding over said court failed to sign said pro-
bate record and the minutes of said County Court for the term at which
said order was made, and for lack of the signature of the county judge
to the minutes, and no evidence was introduced to show that the order
was in fact made by the court, said order is a nullity; and further that
said order does not describe the land, the sale of which it purports to
order. And further, no application by the administration was shown to
sell said land, but the order was made on application of a creditor, with-
out requiring the administrator to show cause why he should not apply
for said order; which objections were by the court sustained and said
order of sale was excluded, to which ruling of the court the plaintiff
then and there excepted.

"Appellant also offered in evidence so much of the probate records as
show an order entered at the June term, 1868, as follows:

" 'J. H. Caudle, Administrator, v. The Estate of R. C. Hemmingway.
Petition to sell land to enforce vendor's lien.

" 'This cause coming on to be heard on application of J. H. Caudle,
administrator of the estate of R. C. Hemmingway, deceased, to sell the
land to enforce vendor's lien, it is ordered by the court that said admin-
istrator proceed to sell the land on credit of twelve months, taking bond
with approved security retaining a lien on the land for the payment of
the purchase money, after giving notice as required by law, on the first
Tuesday in August, 1868, and ordered by the court that the same be
recorded.'

"To the introduction of which order of sale the defendant objected
on the ground that the order does not describe the land ordered to be
sold, nor does it refer to anything from which a description can be ob-
tained or the land identified. And further, that the minutes of that term
of the court were not signed and approved by the presiding judge, and no
evidence was introduced to prove the authenticity of said order; which
objections were by the court sustained, and said order of sale excluded,
to which ruling of the court the plaintiff excepted, and tendered his bill
of exception, which bills of exception in both instances above stated
were approved by the trial court.

"These orders were necessary to be established by plaintiff as part of
his evidence of title, and this court has concluded that the trial court
erred in not admitting these orders in evidence, unless the ruling of the
court below can be sustained on the ground that the orders were not ad-
missible because the judge of the court before whom they were rendered
did not sign and approve the minutes of the court that contained these
orders. Therefore, the Court of Civil Appeals of the Third Supreme

Judicial District of the State of Texas, through its Chief Justice, certifies to the Supreme Court of Texas, the following question:

"Was it essential to the validity of these orders that the presiding judge of the court that rendered and passed them should have approved and signed the minutes of the term at which they were rendered?"

To the question we answer: The failure of the judge of the county court to sign the minutes did not render the orders void.

The law in force at the time of the transaction certified is embodied in the following articles of Paschal's Digest, volume 1:

"Art. 1236. Each county court shall cause to be procured and kept in the clerk's office, suitable books, in which it shall be the duty of the clerk to record all the proceedings of each term of the court; which record shall be read over and signed by the chief justice or the member of the court presiding, at the end of each term; and the clerk shall also record all the proceedings of such court that are authorized to take place in the vacations between the terms; and such records shall be read over on the first day of the term of the proper court next after such proceedings took place, and shall be signed by the chief justice, or member of the court presiding.

"Art. 1383. All decisions, orders, decrees, and judgments of the county court, under the provisions of this act, shall be entered on the records of the court by the clerk, at the time such decision, order, decree, or judgment shall be made or rendered."

In the construction of similar statutes, the courts of other States differ,—some holding that such a statute is mandatory, and that a failure to comply with it renders the judgments and orders of the court invalid; while the courts of other States hold such statutes to be directory, and that a failure on the part of the judge to sign the minutes does not invalidate the proceedings of the court. Black on Judg., sec. 109; Bartlett v. Lang, 2 Ala., 161; Rollins v. Henry, 78 N. C., 342.

The Court of Criminal Appeals in our State has adopted the view expressed by the latter decisions. Lockhart v. State, 32 Texas Crim. Rep., 149; Wright v. State, 37 Texas Crim. Rep., 3.

We are of opinion that the decisions which hold the law to be directory are supported by the better reason. We can see no sound reason for the rule which makes the failure of a judge to perform such a duty fatal to the judgments and orders actually pronounced and entered.